UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

JUSTIN BATSON-KIRK,

      Plaintiff,

  - against -

CITY OF NEW YORK, DETECTIVE BARRY BROWN,
AND JOHN DOE 1-3, individually and in
their official capacities, (the names
John and Jane Doe being fictitious, as
the true names are presently unknown),

      Defendants.

-------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

**MEMORANDUM & ORDER**

07-CV-1950 (KAM) (JMA)

MATSUMOTO, UNITED STATES DISTRICT JUDGE:

      Plaintiff, Justin Batson-Kirk ("plaintiff"), brings
this action against the City of New York (the "City") and
Detective Barry Brown ("Detective Brown") (collectively,
"defendants") alleging false arrest, excessive force, failure to
intervene, malicious abuse of process, malicious prosecution,
and municipal liability, in violation of 42 U.S.C. § 1983, and
various state law tort claims, all arising from the allegedly
unlawful arrest, confinement, and prosecution of plaintiff.
Pending before the court is defendants' motion for summary
judgment, pursuant to Federal Rule of Civil Procedure 56,
seeking dismissal of plaintiff's federal law claims and
requesting that the court decline to exercise supplemental
jurisdiction over plaintiff's remaining state law claims.  Oral
argument on defendants' motion was held on May 13, 2009.  For

the reasons set forth herein, defendants' motion for summary judgment is granted and the case is hereby dismissed in its entirety.

## BACKGROUND

The following facts, taken from the parties' statements pursuant to Local Civil Rule 56.1,[1] are undisputed unless otherwise indicated. The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in a light most favorable to the nonmoving plaintiff.

This matter arises out of two incidents – one on or about May 15, 2006 and the other on or about May 16, 2006, in which the victim, Anibal Gonzalez, was assaulted by three individuals in the parking lot of a Key Food supermarket at the intersection of Guy Brewer Boulevard and Baisley Boulevard in Jamaica, Queens.[2] (Doc. No. 25, Defendants' Statement Pursuant

---

[1] Plaintiff has failed to file his Rule 56.1 Statement, supporting evidence and memorandum of law via Electronic Case Filing ("ECF"), as required by the rules of this court. Nonetheless, the court has considered plaintiff's submissions and orders plaintiff to file his submissions by ECF forthwith. *See* Administrative Order 2004-08.

[2] Plaintiff maintains that, according to a Complaint Follow Up Report dated May 19, 2006, the attacks occurred on May 16 and 17, 2006. (*See* Pl. 56.1 Stmt. ¶ 8 and Ex. D annexed thereto.) Plaintiff further asserts that, according to a Complaint Report dated May 15, 2006, the victim complained that he had been

to Local Civil Rule 56.1 ("Def. 56.1 Stmt.") ¶¶ 7-11; Brown Dep. at 17-18, 70-71; Reddy Decl., Ex. E, Queens County District Attorney's Office's Intake Bureau Crime Report, dated May 24, 2006, at 1-2; Reddy Decl., Ex. F, Sprint Report; Reddy Decl., Ex. G, NYPD Complaint Follow Up Report, dated May 19, 2006; Plaintiff's Statement Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Stmt.") ¶¶ 7-11.)  As a result of the latter assault, plaintiff sustained serious injuries to his chest, face and head, and was in a coma until May 23, 2006.  (Def. 56.1 Stmt. ¶¶ 12-13.)[3]

An eyewitness whose identity is subject to a confidentiality order, who was an employee of the Key Food supermarket located near the assaults, observed both assaults on

_____

assaulted with a stick by a "single 'perp'" as opposed to three assailants.  (*See* Pl. 56.1 Stmt. ¶ 4 and Ex. C annexed thereto.) The May 15, 2006 Complaint Report, however, does not definitively state that the "perp" that struck plaintiff was unaccompanied.  Further, even assuming, *arguendo*, that plaintiff is correct, despite the evidence presented by defendants indicating that the assaults occurred on May 15 and 16, 2006, as discussed below, any dispute regarding the date of one of the assaults or the number of assailants does not raise a genuine issue of material fact warranting trial.  Moreover, Detective Brown testified that the dates in the Criminal Complaint were erroneous.  (*See* Doc. No. 24, Declaration of Prathyusha Reddy, Esq. ("Reddy Decl."), dated Oct. 10, 2008, Ex. C, Deposition of Detective Barry Brown ("Brown Dep.") at 81.)

[3] Notwithstanding plaintiff's contention that the victim was allegedly attacked on May 17, 2006, plaintiff admits that the May 16, 2006 assault left the victim in a coma until May 23, 2006.  (Pl. 56.1 Stmt. ¶¶ 12-13.)

Mr. Gonzalez and called 9-1-1 on May 16, 2006 to report the
attack. (Def. 56.1 Stmt. ¶¶ 10, 14, 19.) Detective Brown
confirmed with the eyewitness's supervisor at the Key Food that
the eyewitness was working on the evenings of the assaults and
also interviewed the eyewitness. (*See* Brown Dep. 75-76.)

According to the evidence before the court, including
Detective Brown's sworn deposition testimony, on May 19, 2006,
the eyewitness was interviewed by Detective Brown at the Key
Food supermarket. (Def. 56.1 Stmt. ¶ 15; Brown Dep. at 10-12.)
During the interview, the eyewitness advised Detective Brown
that he had observed both assaults on Mr. Gonzalez. (Def. 56.1
Stmt. 16; Brown Dep. at 17-19.)

With respect to the first assault, the eyewitness
advised Detective Brown that while on his way home from work, he
observed three individuals grab the victim, hit and punch him
repeatedly, and slam him into a phone booth. (Def. 56.1 Stmt.
18; Pl. 56.1 Stmt. 18; Brown Dep. at 17.) When asked by
Detective Brown whether he could identify the assailants, the
eyewitness responded affirmatively, stating that he regularly
sees the assailants "out on the corner." (Brown Dep. at 18.)
Brown further testified that the eyewitness claimed to see the
assailants "all the time when he leaves from work to go home."
(Brown Dep. at 18.)

With respect to the second assault, Detective Brown testified that the eyewitness stated that he saw the same three individuals chase the victim through the Key Food parking lot, repeatedly punch, kick and stomp on him, beat him with a stick, slam him into a phone booth, and elbow him in the face causing the victim to hit the ground. (Def. 56.1 Stmt. ¶ 19; Brown Dep. at 18, 70.) The eyewitness further advised Detective Brown that he observed the latter attack from approximately 10 to 20 feet away. (Pl. 56.1 Stmt. ¶ 20; Def. 56.1 Stmt. ¶ 20; Brown Dep. at 19.) The eyewitness described the three assailants to Detective Brown, identifying them as three African American males, one with dark skin, one with light skin and one as heavy set. (Def. 56.1 Stmt. ¶ 23; Pl. 56.1 Stmt. ¶ 23; Brown Dep. at 25-26.) Detective Brown believed that the eyewitness called 9-1-1 on May 16, 2006. (Def. 56.1 Stmt. ¶ 38; Brown Dep. at 75.) When the eyewitness was again asked by Detective Brown whether he could identify the assailants and assist in their apprehension, the eyewitness responded affirmatively. (Brown Dep. at 18-19.)

In an attempt to locate the assailants, Detective Brown met with the eyewitness on May 23, 2006 in the parking lot of the Key Food supermarket to conduct a "canvas" of the neighborhood. (Def. 56.1 Stmt. ¶ 25; Brown Dep. at 54.) They

were followed by two officers in a separate police vehicle.
(Def. 56.1 Stmt. ¶ 27.)

When Detective Brown and the eyewitness arrived at the
intersection of Guy Brewer Boulevard and Baisley Boulevard, the
eyewitness identified plaintiff as "one of the guys" that
assaulted Anibal Gonzalez. (Def. 56.1 Stmt. ¶ 28; Brown Dep. at
55.) Detective Brown asked the eyewitness if he was "100
percent sure" that plaintiff was one of the assailants, and the
eyewitness responded affirmatively. (Def. 56.1 Stmt. ¶ 30;
Brown Dep. at 55.) Detective Brown testified that the
eyewitness noted that plaintiff was wearing the "same clothes"
as worn by one of the assailants during one of the assaults.
(Def. 56.1 Stmt. ¶ 29; Brown Dep. at 55.) Detective Brown then
said, "Take a close look. Are you 100 percent sure that that's
the guy that assaulted Anabal [sic] Gonzalez?" (Brown Dep. at
55; Def. 56.1 Stmt. ¶ 30.) The eyewitness again responded
affirmatively. (*Id.*) Detective Brown then directed the two
officers that had been following his car to stop plaintiff.
(Brown Dep. at 55.) Detective Brown asked the eyewitness for a
third time to take a close look and to be "100 percent" certain
that "this is the guy." (*Id.*) Brown testified that the
eyewitness said, "I am one hundred percent sure[.]" (*Id.*)
Detective Brown then radioed his two colleagues and advised that

the eyewitness had positively identified plaintiff as one of the assailants. (*Id.*)

Plaintiff was arrested, *inter alia*, for Gang Assault in the First Degree, Assault with intent to cause serious physical injury, and Harassment. (Def. 56.1 Stmt. ¶ 33; Pl. 56.1 Stmt. ¶ 33.) Plaintiff testified that no officer ever used force on him at any point during his arrest or incarceration. (Def. 56.1 Stmt. ¶ 41; Pl. 56.1 Stmt. ¶ 41; Reddy Decl., Ex. K, Excepts from the Deposition of Justin Batson-Kirk ("Pl. Dep.") at 104, 171.) At the time of his arrest, plaintiff was found in possession of a substance later confirmed to be marijuana. (Def. 56.1 Stmt. ¶¶ 34-35; Pl. 56.1 Stmt. ¶ 34-35.) It does not appear, however, that plaintiff was charged with any drug-related offenses. (Pl. 56.1 Stmt. ¶ 34.) Plaintiff further testified that he had been at the corner of Guy Brewer Boulevard and Baisley Boulevard on May 15, 2006 and that he had frequented that intersection "every day" for "half of [his] life." (Pl. Dep. at 39-40.)

Following plaintiff's arrest, the criminal prosecution was handled by the Queens District Attorney's Office. Assistant District Attorney Jared Rosenblatt was assigned to the case. (Def. 56.1 Stmt. ¶ 42; Reddy Decl. Ex. L, Declaration of Jared Rosenblatt ("Rosenblatt Decl."), ¶¶ 1-2.) In a declaration

submitted to the court in support of defendants' motion, Mr.

Rosenblatt states that during the pendency of the prosecution,

he

> interviewed a civilian witness . . . . In sum
> and substance, the witness informed me that he
> had personally witnessed both attacks on Anibal
> Gonzalez and confirmed that the man he
> indentified to Detective Barry Brown, who I
> learned to be Mr. Batson-Kirk, was one of the
> individuals who had repeatedly punched, kicked
> and otherwise assaulted Mr. Gonzalez on those two
> occasions.

(Rosenblatt Decl., ¶ 4.)

On May 24, 2006, plaintiff was charged in a criminal

court complaint with Attempted Murder in the Second Degree, Gang

Assault in the First Degree, Assault in the First Degree and

Assault in the Third Degree. (Def. 56.1 Stmt. ¶ 44; Reddy

Decl., Ex. M, Criminal Court Complaint.) On June 8, 2006,

sixteen days after plaintiff's arrest, plaintiff's attorney

presented several "alibi" witnesses to Mr. Rosenblatt and

Detective Brown. (Def. 56.1 Stmt. ¶ 37; Brown Dep. at 66.)

In his declaration in support of defendants' motion

for summary judgment, Mr. Rosenblatt further states that the

eyewitness "subsequently informed me, in sum and substance, that

he was fearful, would no longer cooperate in the criminal

prosecution and refused to testify either in the Grand Jury or

in a courtroom in a criminal trial." (Rosenblatt Decl. ¶ 5.)

On April 26, 2007, the criminal charges against plaintiff were dismissed. (*See* Def. 56.1 Stmt. ¶ 46; Declaration of Morris J. Newman, Esq., dated Oct. 24, 2008 ("Newman Decl."), Ex. G, Criminal Court Minutes.) The criminal court minutes reveal that Assistant District Attorney Leslie McCarron advised the court, in relevant part:

> Your Honor, this has not been presented to the Grand Jury. This is being handled by ADA Jared Rosenblatt. Apparently, the complaining witness could not make it – make a definitive identification, and the People are not able to proceed in this matter, so at this time the People are moving to dismiss the docket that's before the Court.

(Newman Decl., Ex. G, Criminal Court Minutes.)

## DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") for the alleged deprivation of his Constitutional rights. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1979) (internal quotation marks and citation omitted). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

Here, it is undisputed that defendants acted under the color of law. Instead, the parties dispute whether plaintiff's rights were violated. Defendants now move for summary judgment seeking dismissal of plaintiff's Complaint.

## A. Summary Judgment Standard

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the

governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. General Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001). Nevertheless, the nonmoving party may not rest "merely on allegations or denials" but must instead "set out specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Instead, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

**B. False Arrest Claims**

Defendants move for summary judgment as to plaintiff's false arrest claims on the grounds that there was probable cause for plaintiff's arrest. The Second Circuit has held that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted); *see Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). The elements of false arrest under Section 1983 are substantially the same as the elements under New York law and their analysis is identical. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

"The requirement of probable cause does not create a high bar for law enforcement." *Sforza v. City of New York*, No. 07-CV-6122, 2009 U.S. Dist. LEXIS 27358, at *40 (S.D.N.Y. Mar 31, 2009). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted). Significantly, the

"validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555, (1967)). "Rather, the court looks only to the information that the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The question of whether or not probable cause existed may be determinable as a matter of law where there is no dispute as to the pertinent events and the knowledge of the officers. *See Weyant*, 101 F.3d at 852 (citation omitted).

Plaintiff contends that defendants cannot establish probable cause on this motion because the eyewitness's statements to Detective Brown are inadmissible hearsay. To be sure, while hearsay may not be used to support a motion for summary judgment, *Sarno v. Douglas Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999), here, the eyewitness's statements regarding plaintiff are not being offered for the truth of the matter asserted, *i.e.*, that plaintiff in fact assaulted the victim, but rather to determine whether the information Detective Brown had when he arrested plaintiff establishes probable cause. *See United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir. 1991) (noting that evidence offered to show the effects of statements on a listener, or as proof of the

defendant's state of mind, are not hearsay); *Marin v. City of New York*, No. 04-CV-3194, 2006 U.S. Dist. LEXIS 53048, at *18 (E.D.N.Y. Aug. 1, 2006) (finding that "because the statements are offered to show the information Detective Lynch had when he arrested Marin, they are not inadmissable hearsay").  The statements may also be viewed as showing Detective Brown's state of mind at the time of the arrest.  Viewed in that way, the statements fall into an exception to hearsay under Federal Rule of Evidence Rule 803(3).  Accordingly, the eyewitness's statements to Detective Brown are admissible.

In any event, an officer may rely on hearsay information in his determination of probable cause if there exists a reasonable basis to credit the information.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (determination of whether probable cause to arrest existed must be based on the totality of the circumstances, which includes hearsay); *United States v. Property at 4492 S. Livonia Road*, 889 F.2d 1258, 1267 (2d Cir. 1989) ("Probable cause . . . traditionally may be established by hearsay.") (citation omitted); *Velaire v. City of Schenectady*, 862 F. Supp. 774, 780 (N.D.N.Y. 1994) ("[A] police officer's judgment as to probable cause . . . may be based on hearsay evidence . . . .").  Moreover, probable cause does not inquire into the arresting officers' subjective motivations, but rather

asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (citation omitted); *see Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.")

At oral argument, plaintiff's counsel asserted, for the first time, that a statement made by the Assistant District Attorney Leslie McCarron before the Queens County Criminal Court concerning the reason why the criminal case against plaintiff was dismissed casts doubt over Detective Brown's testimony regarding the eyewitness's identification of plaintiff and, therefore, creates a genuine issue of material fact as whether Brown had probable cause to arrest plaintiff. Specifically, plaintiff's counsel points to ADA McCarron's statement that, "[t]his [case] is being handled by ADA Jared Rosenblatt. Apparently, the complaining witness could not make it – make a definitive identification, and the People are not able to proceed in this matter . . . ." (Newman Decl., Ex. G, Criminal Court Minutes.) Plaintiff's counsel contends that this

statement raises a question of fact as to whether the eyewitness definitively identified plaintiff prior to plaintiff's arrest. The court disagrees.

The statement by ADA McCarron fails to create a genuine issue of material fact on this motion. ADA McCarron's statement is hearsay to the extent it is offered to establish the truth of the matter asserted; that is, the inability of the eyewitness to identify the plaintiff. Moreover, there is no indication whatsoever that Ms. McCarron's statement was based on personal knowledge after speaking with the eyewitness. Indeed, Ms. McCarron states that the case is "being handled by ADA Jared Rosenblatt" and that "*[a]pparently*, the complaining witness could not . . . make a definitive identification . . . ." (*Id.*) (emphasis added.) *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004)(affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein.") (citing Fed. R. Civ. P. 56(e)); *see also* Fed. R. Evid. 602 ("[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

By contrast, the testimony of Detective Brown and the declaration of Mr. Rosenblatt are both based on personal knowledge of what the eyewitness said about the identification of plaintiff after interviewing the eyewitness, and, in the case of Detective Brown, observing the eyewitness identify the plaintiff with "100 percent" certainty during their canvas of the vicinity of the incident. Additionally, their statements regarding the eyewitness's identification of plaintiff are entirely consistent.

Plaintiff further contends that the eyewitness's veracity is sufficiently doubtful to create a genuine issue of material fact for trial. Specifically, plaintiff asserts that certain alleged discrepancies between the dates and times of the assaults as reported by the eyewitness and as recorded by the police department create a triable issue. Plaintiff is mistaken.

Even assuming that the eyewitness inaccurately conveyed the dates of the assaults, or was otherwise mistaken, the overwhelming undisputed evidence supports a finding of probable cause. It is undisputed that on May 19, 2006, Detective Brown interviewed the eyewitness regarding the assaults against Anibal Gonzalez. (Def. 56.1 Stmt. ¶ 15; Brown Dep. at 10-12.) As an employee of the Key Food supermarket near

which the assaults took place, the eyewitness was familiar with the location of the assault and, in fact, had called 9-1-1 to report the latter attack. (Def. 56.1 Stmt. ¶¶ 10, 14, 19.) During the interview, the eyewitness further advised Detective Brown that he had observed both assaults on Mr. Gonzalez and could identify the assailants. (Def. 56.1 Stmt. 16; Brown Dep. at 17-19.) The eyewitness advised Detective Brown that he observed the latter assault from approximately 10 to 20 feet away. (Def. 56.1 Stmt. ¶ 20; Brown Dep. at 19.) The eyewitness described the three assailants to Detective Brown and advised Brown that he had previously and frequently observed the assailants "all the time when [he left] work to go home." (Def. 56.1 Stmt. ¶ 23; Brown Dep. at 18, 25-26.) On May 23, 2006, less than one week after the second assault, the eyewitness and Detective Brown canvassed the vicinity of the assault in an effort to identify the assailants. At that time, the eyewitness identified plaintiff as one of the assailants and noted that he was wearing the same clothes as worn by one of the assailants during one of the assaults. (Def. 56.1 Stmt. ¶ 29; Brown Dep. at 55.) Before plaintiff was arrested, Detective Brown asked plaintiff three separate times whether he was "100 percent sure" that plaintiff was one of individuals observed assaulting the victim. The eyewitness responded affirmatively on each occasion. (Brown Dep. at 55; Def. 56.1 Stmt. ¶ 30.) Simply

put, there is no evidence to suggest that, prior to or during plaintiff's arrest, Detective Brown reasonably should have doubted the eyewitness's recollection of the events and assailants involved in the assault, and the identification of the plaintiff.

In view of foregoing undisputed evidence, the court finds that Detective Brown had probable cause to arrest plaintiff. *See Pierre v. City of New* York, No. 05-CV-5018, 2007 U.S. Dist. LEXIS 60707, at *19-20, 23-26 (E.D.N.Y. Aug. 17, 2007) (court found probable cause to arrest plaintiffs where the witness stated to officers, *inter alia*, that he was "sure" the plaintiffs were the assailants, both before and immediately after the plaintiffs were arrested); *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (once a police officer has probable cause, he need not explore every plausible claim of innocence before making an arrest). The court notes that probable cause may be based on mistaken information, so long as the police, as here, acted reasonably and in good faith. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (mistaken identity of perpetrator). Because the undisputed evidence supports a finding that there was probable cause to arrest plaintiff, and because no claim for false arrest can exist where the arresting officer had probable cause, *see*

*Weyant*, 101 F.3d at 852, the court grants defendants' motion for summary judgment as to plaintiff's federal and state false arrest claims.

Moreover, where probable cause for the arrest existed, there was no duty to intervene to prevent the arrest. *See Alfaro v. City of New York*, No. 03-CV-8206, 2007 U.S. Dist. LEXIS 6408, at *15-16 (S.D.N.Y. Jan. 29, 2007). Accordingly, because the court has found that plaintiff's arrest was based on probable cause, plaintiff's failure to intervene claim fails as a matter of law.

## C. Malicious Prosecution

Defendants also seek summary judgment with respect to plaintiff's malicious prosecution claim on the basis that there was probable cause to prosecute plaintiff. In order to state an action for malicious prosecution, a plaintiff must establish four elements: (1) that the defendant initiated a criminal proceeding; (2) that the proceeding terminated favorably to the plaintiff; (3) that there was no probable cause for the criminal charge; and (4) that the defendant acted maliciously. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citations omitted). The elements of malicious prosecution under Section 1983 are substantially the same as claims for malicious

prosecution under New York law.  *See Jocks v. Tavernier*, 316

F.3d 128, 134 (2d Cir. 2003).

"The absence of probable cause is . . . 'an essential

element of a claim for malicious prosecution.'"  *Perez v. City*

*of New York*, No. 01-CV-5384, 2006 U.S. Dist. LEXIS 94211, at *30

(E.D.N.Y. Dec. 29, 2007) (quoting *McClellan v. Smith*, 439 F.3d

137, 145 (2d Cir. 2006)).  The court notes, however, that

> the existence of probable cause at the time of
> arrest may not be sufficient to provide probable
> cause for a prosecution, as 'even when probable
> cause is present at the time of arrest, evidence
> could later surface which would eliminate that
> probable cause.  In order for probable cause to
> dissipate, the groundless nature of the charge
> must be made apparent by the discovery of some
> intervening fact.'

*Sforza,* 2009 U.S. Dist. LEXIS 27358, at *46-47 (quoting *Kinzer*

*v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).

Even assuming, *arguendo*, that the first two elements

have been satisfied, with respect to the third element, the

undisputed facts demonstrate that there was probable cause for

the criminal charge.  Plaintiff has offered no evidence to

establish, or even suggest, that the probable cause that existed

at the time of his arrest dissipated between the arrest and his

prosecution.  *See Sforza,* 2009 U.S. Dist. LEXIS 27358, at *48

(granting summary judgment on plaintiff's malicious prosecution

claim where the plaintiff failed to demonstrate, through admissible evidence, that the probable cause that existed at the time of the arrest had "dissipated" between the plaintiff's arrest and prosecution).   Instead, plaintiff contends that several "alibi" witnesses were presented to the District Attorney's Office.  (*See* Pl. 56.1 Stmt. ¶ 37.)   There is no evidence in the record indicating what the alibi witnesses stated to the District Attorney or that the alibi witnesses' statements dissipated the probable cause that existed at the time of plaintiff's arrest.

Turning to the last element, Detective Brown's liability for malicious prosecution turns on whether he knowingly made false statements about the circumstances of plaintiff's arrest.  Detective Brown contends that he did not "initiate" the criminal proceedings against plaintiff because he did nothing more than report facts which the prosecutor considered in determining whether to initiate a prosecution. (Doc. No. 22, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem.") at 14-15.)   A police officer, however, may be liable for malicious prosecution when it is found that he withheld, misrepresented or falsified evidence, or otherwise acted in bad faith.  *See White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988); *Rothstein*, 373 F.3d at 283.

There is no evidence that Detective Brown acted inappropriately or in bad faith, or that he withheld, misrepresented or falsified evidence. Plaintiff contends that because the dates of the assault may have differed from those set forth in the criminal complaint against plaintiff, Detective Brown falsified information. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem"), at 7-8.) Contrary to plaintiff's contention, Detective Brown testified that the dates set out in the criminal complaint were mistaken, not misrepresented or falsified. (*See* Brown Dep. at 81.) Simply put, there is no evidence of foul play or bad faith. In any event, the dates on which the assault occurred are immaterial given that the eyewitness' statements provided an ample basis upon which to prosecute plaintiff. Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's federal and state malicious prosecution claims.

### D. Qualified Immunity

At oral argument, defendants' counsel urged the court to consider Detective Brown's entitlement to qualified immunity even if the court finds that plaintiff was arrested and prosecuted based on probable cause. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a
reasonable person would have known." *Pearson v. Callahan*, 129
S. Ct. 808, 815 (2009) (citation omitted).

Detective Brown is entitled to qualified immunity if
either (a) his actions did not violate clearly established law,
or (b) it was objectively reasonable for him to believe that his
actions did not violate such law. *See Anderson v. Recore*, 317
F.3d 194, 197 (2d Cir. 2003) (citation omitted). A right is
clearly established if (1) the law is defined with reasonable
clarity, (2) the Supreme Court or the Second Circuit has
recognized the right, and (3) a reasonable officer would have
understood from the existing law that his or her conduct was
unlawful. *See id.* (citation omitted). Even if the contours of
a federal right and an officer's permissible actions were
clearly delineated at the time of the acts complained of, a
defendant may still enjoy qualified immunity if it was
objectively reasonable for him to believe that his acts did not
violate that right. *See Robison v. Via*, 821 F.2d 913, 921 (2d
Cir. 1987) (citation omitted).

"The right not to be arrested or prosecuted without
probable cause has, of course, long been a clearly established
constitutional right." *Pierre*, 2009 U.S. Dist. LEXIS 9548, at
*31 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d

Cir. 1991)).  "As with the substantive analysis of both [false arrest and malicious prosecution] claims, the qualified immunity analysis hinges on the probable cause inquiry."  *Reinhart v. City of Schenectady Police Dep't*, No. 05-CV-630, 2009 U.S. Dist. LEXIS 9548, at *33 (S.D.N.Y. Feb. 10, 2009).

Here, the court has already found that probable cause existed to arrest plaintiff and to commence a criminal action against him.  Accordingly, Detective Brown is entitled to qualified immunity.  *See Ortiz v. Henriquez*, No. 99-CV-3268, 2001 U.S. Dist. LEXIS 13739, at *16 (S.D.N.Y. Sept. 7, 2001) (holding that in the context of a false arrest claim brought pursuant to Section 1983, "the question of immunity . . . subsumes the issue of defendant's probable cause").

### E. Malicious Abuse of Process

Defendants seek summary judgment with respect to plaintiff's malicious abuse of process claim.  Plaintiff has not opposed dismissal of this claim.  (*See generally*, Pl. Mem.)

The Second Circuit recognizes claims brought under Section 1983 for malicious abuse of criminal process.  *See Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994).  The elements of malicious abuse of process are borrowed from state law.  *Id.* Under New York law, in order to maintain a claim for malicious

abuse of process, a plaintiff must show that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* at 80.

"The crux of a malicious abuse of process claim is the collateral objective element." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009). To satisfy this element, "a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose — that is, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* (internal quotation marks and citation omitted; parenthetical in original). "For example, . . . fabricating assault charges to save one's job could be abuse of process because safeguarding one's own employment lies outside the legitimate goal of criminal process." *Id.* (internal quotation marks and citation omitted). Defendants challenge the "collateral objective" element of plaintiff's claim.

The record is devoid of any evidence suggesting that plaintiff's prosecution was motivated by any collateral objective. Indeed, based on the record before the court, no

reasonable jury could conclude that defendants arrested and prosecuted plaintiff for some improper purpose lying outside of the legitimate goal of criminal process. Defendants' motion for summary judgment is therefore granted as to plaintiff's federal and state malicious abuse of process claims.

### F. Excessive Force

Defendants also seek to dismiss plaintiff's excessive force claims, arguing that plaintiff has admitted that no force was used against him during his arrest or incarceration. Plaintiff has not opposed dismissal of this claim. (*See generally*, Pl. Mem.)

Claims for excessive force used by police officers "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used was 'objectively unreasonable.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d. Cir 1996) (citation omitted). The elements of an excessive force claim under Section 1983 are substantially the same as claims for excessive force claims under New York law. *Ling-Rong Chen v. City of Syracuse*, No. 06-

CV-1143, 2009 U.S. Dist. LEXIS 16227, at *13 (N.D.N.Y. Mar. 2, 2009).

Here, plaintiff admits that no officer ever used force on him at any point during his arrest or incarceration. (Def. 56.1 Stmt. ¶ 41; Pl. 56.1 Stmt. ¶ 41; Pl. Dep. at 104, 171.) Because plaintiff has not produced any evidence demonstrating a genuine factual issue regarding plaintiff's excessive force claims, those claims under federal and state law are dismissed. Likewise, plaintiff's failure to intervene claim premised on his excessive force claim is also dismissed. *See Atkins v. County of Orange*, 372 F. Supp. 2d 377, 407 (S.D.N.Y. 2005) (court dismissed failure to intervene claim where plaintiff failed to establish any constitutional violations based on excessive force).

Additionally, because plaintiff has failed to raise a disputed issue of material fact as to whether "objectively unreasonable" force was used during plaintiff's arrest or incarceration, plaintiff's state law assault and battery claims also fail. *See Grant v. City of New York*, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007) (granting summary judgment on the plaintiff's assault, battery and excessive force claims where plaintiff failed to establish that "objectively unreasonable" force was used during her arrest) (citing *Cornett v. Brown*, No.

04-CV-0754, 2006 U.S. Dist. LEXIS 22415, 2006 WL 845568 at *16
(E.D.N.Y. March 30, 2006) (dismissing assault and battery claims
where the court found that "[p]laintiff has made no argument
that defendants used unreasonable force")).

### G. Municipal Liability Claims

It is well established that a municipality may not be
held liable under Section 1983 for alleged unconstitutional
actions by its employees below the policy-making level solely
upon the basis of *respondeat superior*. *See Monell v. Department
of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978);
*DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). To impose
liability under Section 1983 on a city for the acts of its
employees, a plaintiff must "plead and prove . . . (1) an
official policy or custom that (2) causes the plaintiff to be
subjected to (3) denial of a constitutional right." *Zahra v.
Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation
omitted).

Defendants contend that plaintiff's Section 1983 claim
against the City should be dismissed because "plaintiff's
allegation that there is an unconstitutional policy or practice
of arresting African Americans without probable cause and a
custom and practice of inadequately training its employees is
baseless and conclusory." (Def. Mem. at 24.) Defendant further

29

contends that there are "no facts in the record to support any of these allegations." (*Id.*)

Plaintiff's opposition papers make no effort to present evidence rebutting defendants' motion for summary judgment on behalf of the City. Rather, plaintiff conclusorily argues that the City should be liable because "Detective Brown . . . failed to follow proper police procedures resulting in the wrongful arrest and deprivation of Plaintiff's rights. Thus, a <u>Monell</u> claim is viable." (Pl. Mem. at 9.) Plaintiff's argument is unconvincing.

The record does not contain any facts to indicate that the City had a custom or policy that caused plaintiff's alleged injuries, and plaintiff does not contend otherwise in opposition to the instant motion. Accordingly, defendants' motion to dismiss plaintiff's Section 1983 claim against the City is granted.

## H. State Law Negligence Claim

Plaintiff alleges that his injures "were caused by the carelessness, recklessness and negligence of defendant City of New York . . . ." (Compl. ¶ 80.) "As a matter of public policy a negligence claim arising out of an investigation or prosecution will not be recognized under New York law." *Rivers*

*v. Towers, Perrin, Foster & Crosby, Inc.*, No. 07-CV-5441, 2009
U.S. Dist. LEXIS 26301, at *29 (E.D.N.Y. Mar. 27, 2009)
(citations omitted); *see Bernard v. United States*, 25 F.3d 98,
102 (2d Cir. 1994) (observing that New York law does not provide
for recovery under general negligence principles for a claim
that law enforcement officials failed to exercise the
appropriate degree of care in effecting an arrest or initiating
a prosecution); *Pierce v. Ottoway*, No. 06-CV-644, 2009 U.S.
Dist. LEXIS 21866, at *26 (W.D.N.Y. Mar. 18, 2009) ("Courts
within New York have consistently held that where the underlying
conduct on which a negligence claim is based rests on an arrest,
imprisonment, and prosecution of the plaintiff, the '[p]laintiff
may not recover under broad principles of general negligence, .
. . but must proceed by way of the traditional remedies of false
arrest and imprisonment and malicious prosecution.'") (quoting
*Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 744
(4th Dep't 1979)).  Accordingly, plaintiff's negligence claim
against the City is dismissed.

**I. State Law Negligent Hiring, Training and Supervision Claims**

"It is well settled under New York law that '[a] claim
for negligent hiring or supervision can only proceed against an
employer for an employee acting outside the scope of her
employment.'"  *Stokes v. City of New York*, No. 05-CV-07, 2007

U.S. Dist. LEXIS 32787, at *53 (E.D.N.Y. May 3, 2007) (quoting *Colodney v. Continuum Health Partners, Inc.*, No. 03-CV-7276, 2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. Apr. 15, 2004)); *Annunziata v. City of New York*, No. 06-CV-7637, 2008 U.S. Dist. LEXIS 42097, at *15-16 (S.D.N.Y. May 28, 2008) (citing *Rowley v. City of New York*, No. 00 Civ. 1793, 2005 U.S. Dist. LEXIS 22241, at *34-35 (S.D.N.Y. Sept. 30, 2005)). "Where an employee acts within the scope of his or her employment, the employer generally is held liable for all the employees' torts under the doctrine of *respondeat superior*." *Rowley*, 2005 U.S. Dist. LEXIS 22241, at *34 (citation omitted).

Here, it is undisputed that Detective Brown was acting within the scope of his employment at all relevant times. Accordingly, summary judgment on plaintiff's negligent hiring, training, retaining and supervision claims is warranted.[4]

---

[4] "While an exception exists to this general principle where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring or retention of the employee, . . . that exception is inapposite here." *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997) (stating the gross negligence exception and finding it inapplicable because the "State and its political subdivisions . . . are not subject to punitive damages"); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("we hold that a municipality is immune from punitive damages under 42 U. S. C. § 1983."); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997) (same).

**J. Vicarious Liability/*Respondeat Superior***

Plaintiff also seeks to hold the City liable as the employer of Detective Brown under the state law doctrine of *respondeat superior*. (*See* Compl. ¶¶ 81-83) (alleging that "Defendant City . . . is vicariously liable for the acts of its employees . . . who were on duty and acting in the scope of their employment . . . .") Although the Supreme Court has held that a plaintiff is prohibited from seeking relief under Section 1983 against a municipal defendant under a theory of *respondeat superior*, *see Monell*, 436 U.S. at 691, plaintiff's *respondeat superior* claim arises from state law, not Section 1983. *See Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34, 38 (2d Cir. 1985) (dismissing Section 1983 claims under Monell but permitting state law claims based on *respondeat superior* to survive).

Notwithstanding, "there can be no imposition of vicarious liability in the absence of underlying liability." *Shapiro v. Kronfeld*, No. 00-CV-6286, 2004 U.S. Dist. LEXIS 23807, at *70 (S.D.N.Y. Nov. 30, 2004) (citing *Wende C. v. United Methodist Church*, 6 A.D.3d 1047, 1052, 776 N.Y.S.2d 390, 395 (4th Dep't 2004) (collecting cases)); *Clark v. Dowty*, No. 05-CV-1345, 2007 U.S. Dist. LEXIS 49184, at *46 (D. Conn. July 9, 2007) (citing *Jones v. City of Hartford*, 285 F. Supp. 2d 174,

190 (D. Conn. 2003)). Accordingly, in view of the dismissal of the state law claims against defendants, plaintiff's claims against the City premised on a theory of *respondeat superior* are dismissed as a matter of law.[5]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and the case is hereby dismissed in its entirety. The Clerk of Court is respectfully requested to enter judgment in defendants' favor, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
        May 28, 2009

_____    /s/_____ _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

---

[5] Having dismissed all of plaintiff's federal and state law claims, the court need not address defendant's request that the court decline to exercise supplemental jurisdiction over plaintiff's state law claims.